UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

COALITION TO SAVE THE MENOMINEE RIVER INC.,

       Plaintiff,

     v.                                          Case No. 18-C-1798

US ENVIRONMENTAL PROTECTION AGENCY,
ACTING ADMINISTRATOR OF THE US
ENVIRONMENTAL PROTECTION AGENCY,
US ARMY CORPS OF ENGINEERS, and
SECRETARY OF THE US ARMY,

       Defendants,

   and

AQUILA RESOURCES INC.,

       Interpleader Defendant.

## DECISION AND ORDER

Plaintiff Coalition to Save the Menominee River Inc. filed this action for declaratory relief against the United States Environmental Protection Agency (EPA), the acting administrator of the EPA, the United States Army Corps of Engineers, and the Secretary of the United States Army (Federal Defendants), asserting that the Corps, rather than the Michigan Department of Environmental Quality (MDEQ), should exercise jurisdiction over a permit relating to Intervenor-Defendant Aquila Resources Inc.'s proposal to construct the Back Forty Mine along the Menominee River in Menominee County, Michigan. Both the Federal Defendants and Aquila filed motions to dismiss. For the following reasons, the defendants' motions will be granted and the case will be dismissed.

# BACKGROUND

**A. Statutory and Regulatory Background**

Congress enacted the Clean Water Act (CWA) in 1972 "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The Act generally prohibits the discharge of pollutants into navigable waters without a permit. 33 U.S.C. § 1311(a). Section 404(a) of the CWA authorizes the Secretary of the Army, acting through the Army Corps of Engineers, to issue a Section 404 permit for the discharge of dredged or fill material into navigable waters. § 1344(a). The EPA retains oversight of the Section 404 permitting program and may veto the Corps' approval of a permit when the dredged or fill material would have "an unacceptable adverse effect on municipal water supplies, shellfish beds and fishery areas . . . , wildlife, or recreational areas." § 1344(c).

The Act allows a state to request permission from the EPA to administer its own individual and general permit program for the discharge of dredged or fill material into "navigable waters . . . other than those waters which are presently used, or are susceptible to use in their natural condition or by reasonable improvement as a means to transport interstate or foreign commerce . . . including wetlands adjacent thereto." § 1344(g)(1). If the EPA approves a state's Section 404 permit program, the federal permit program is suspended, except for those waters exempted from the assumption, and the state assumes jurisdiction over the permitting process. § 1344(h). Even though the federal program is suspended, the federal government acts as an overseer of the state's process by reviewing any action the state takes with respect to Section 404 permits. § 1344(j).

In accordance with § 1344(j), the state must provide the EPA with a copy of every permit application it receives as well as the proposed permit the state intends to issue. The EPA

Administrator then provides copies of the application to the Corps and to the U.S. Department of the Interior (DOI). If the EPA intends to comment on the state's handling of the application, it must notify the state within 30 days of its intent to do so. "[A]fter consideration of any comments made in writing with respect to such application or such proposed general permit" from the Corps or DOI, the EPA must provide its comments to the state within 90 days. *Id.* Once a state receives notice that the EPA intends to comment on the application, the state may not issue a permit until it has received the EPA's comments or the 90-day commenting period has passed. The EPA may also request that the state submit additional information that it determines is necessary for its review.

If the EPA objects to the proposed permit, the state "shall not issue such proposed permit" and may either issue a revised permit that resolves the EPA's objections, deny the permit application, or request a public hearing. *Id.* Permitting authority only transfers back to the Corps if the state does not take any action in response to the EPA's objection. *Id.* At that time, the Corps conducts its own analysis of the permit application. *See* 40 C.F.R. § 233.50(i).

Only Michigan and New Jersey have been federally approved to administer Section 404 permit procedures. The EPA approved Michigan's Section 404 permit program in 1984, after the Corps entered into a Memorandum of Agreement (MOA) with the State of Michigan on April 3, 1984. *See* 49 Fed. Reg. 38,947 (Oct. 2, 1984).

**B. Allegations Contained in the Amended Complaint**

The Coalition is a non-stock, non-profit corporation organized under Chapter 181 of the laws of the State of Wisconsin. The purpose of the Coalition is to educate and support citizens regarding environmental issues affecting the Menominee River, including the potential impacts of Aquila's proposed Back Forty Mine project. Am. Compl. ¶ 13, Dkt. No. 18.

3

Aquila seeks to build a polymetallic zinc, copper, and gold mine, referred to as the Back Forty Mine, along the Menominee River in Menominee County, Michigan. Aquila submitted a Section 404 permit application to the MDEQ on November 16, 2015. Aquila later withdrew the application after the EPA objected to the permit and submitted a second application in January 2017. *Id.* ¶ 45. On January 26, 2017, the MDEQ issued a Request for Clarification to Aquila, which explained that Aquila had not properly identified the extent of the impact the project would have on wetlands, groundwater, and surface water resources. *Id.* ¶ 46. Aquila submitted an updated application in October 2017. On December 8, 2017, the MDEQ declared that Aquila's joint permit application was administratively complete, scheduled a public hearing on the permit application, and provided the EPA with a copy of the Section 404 permit application. *Id.* ¶¶ 57–58.

The MDEQ held a public hearing on the permit on January 23, 2018, and received public comment until February 2, 2018. *Id.* ¶ 60. The MDEQ forwarded a summary of the public comments to Aquila on March 2, 2018, and invited a response. On March 8, 2018, the EPA objected to the proposed permit, which triggered the 90-day deadline for its objections to be resolved. *Id.* ¶ 63. The EPA's objection letter required that various actions be taken by Aquila and that specific information be provided for the objections to be resolved. *Id.* ¶ 64. On March 19, 2018, the MDEQ provided Aquila with a seven-page letter summarizing the type of information it needed to provide in order to resolve the EPA's objections. The EPA reiterated on March 21, 2018, that all of the MDEQ's issues would need to be addressed to satisfy the EPA's objections. *Id.* ¶ 71. Aquila submitted its responses to the EPA's objections in April 2018.

On April 30, 2018, the MDEQ's Water Resources Division (WRD), which was charged with reviewing the permit, recommended denying the permit because the project was not consistent with

state permitting requirements. *Id.* ¶ 76. On May 2, 2018, the WRD provided the EPA with its

findings. *Id.* ¶ 77. In a May 3, 2018 letter to the MDEQ, the EPA indicated that some of its March

8, 2018 objections had been resolved by the information Aquila had provided and that it would

consider addressing the remaining objections if the MDEQ imposed appropriate conditions that

would require Aquila to provide the missing data at a later point. *Id.* ¶¶ 78–79. On May 24, 2018,

the WRD issued a memo recommending that the MDEQ deny the permit application but setting the

conditions it would recommend be included in the permit to satisfy its concerns about the missing

information. *Id.* ¶ 80.

On June 1, 2018, the EPA advised that the proposed conditions resolved its objections. The

MDEQ subsequently issued the permit on June 4, 2018. After the MDEQ issued the permit, the

Coalition filed a Petition for a Contested Case in Michigan's administrative system. *Id.* ¶ 86. The

Coalition also filed this lawsuit to address whether the permit is within the scope of authority

delegated to Michigan in its assumption of Section 404 permitting authority and whether the EPA's

objections were properly resolved.

## LEGAL STANDARD

The defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6). A Rule 12(b)(1) motion challenges the jurisdiction of this court of the subject matter

related in the complaint. Fed. R. Civ. P. 12(b)(1). To survive a Rule 12(b)(1) motion, the plaintiff

must establish that the jurisdictional requirements have been met. *Schaefer v. Transp. Media, Inc.*,

859 F.2d 1251, 1253 (7th Cir. 1988). The proponent of federal jurisdiction must "prove those

jurisdictional facts by a preponderance of the evidence." *Meridian Sec. Ins. Co. v. Sadowski*, 441

F.3d 536, 543 (7th Cir. 2006). When the moving party "launches a factual attack against

jurisdiction, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (internal quotation marks and citations omitted).

A Rule 12(b)(6) motion tests the sufficiency of the complaint to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 8 mandates that a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that a complaint must contain factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, it must plead "more than labels and conclusions." *Id.* A simple, "formulaic recitation of the elements of a cause of action will not do." *Id.* In evaluating a motion to dismiss, the court must view the plaintiff's factual allegations and any inferences reasonably drawn from them in a light most favorable to the plaintiff. *Yasak v. Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi.*, 357 F.3d 677, 678 (7th Cir. 2004).

## ANALYSIS

The defendants contend that the Coalition's amended complaint fails to state a claim upon which relief can be granted. The Federal Defendants also assert that the Coalition lacks standing to assert its claim. The court will not address the issue of standing because, as explained below, the amended complaint fails to state a claim upon which relief can be granted.

### A. As-Applied Challenge

The Coalition asserts an as-applied challenge under the Administrative Procedure Act (APA). An as-applied challenge "'must rest on final agency action under the APA,' taken within

6

six years of the filing of the complaint." *Nat'l Wildlife Fed'n v. EPA*, 945 F. Supp. 2d 39, 43 (D.D.C. 2013) (quoting *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997)); *see also* 5 U.S.C. § 704 (The APA provides for judicial review of "final agency action for which there is no other adequate remedy in a court."). The Coalition claims that by objecting to Aquila's permit application, the Federal Defendants made a tacit jurisdictional determination that Aquila's proposed permit was within the scope of authority assumed by Michigan. It maintains that the EPA's decision—implicit or otherwise—that Michigan has assumed authority over the area of the Menominee River affected by the proposed mine is a final, reviewable agency decision under the APA. The defendants assert that the EPA's decision to object to the proposed permit is not a "final agency action" subject to judicial review. They contend that the Coalition's claim is nothing more than an untimely challenge to the only final agency decision alleged in the amended complaint, that is, the EPA's 1984 decision to grant Michigan assumed permitting authority.

The APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. Two conditions must be satisfied for agency action to be considered "final" and subject to review: "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1813 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks and citations omitted)).

As an initial matter, the Coalition argues that the 1984 MOA was not a final agency action with respect to which waters are within Michigan's assumed permitting authority. The 1984 MOA at best, the Coalition argues, "reflects a federal agency opinion that certain stretches of the River were not within Michigan's assumed authority, but that is a far cry from being a final decision that all the remaining parts of the River were within Michigan's authority." Dkt. No. 27 at 17. But the MOA itself refutes the Coalition's position. The MOA states:

> Consistent with the provisions of Section 404(g) CWA, all waters within the State of Michigan shall be regulated by [Michigan] as part of this program OTHER THAN those waters which are presently used, or are susceptible to use in their natural condition or by reasonable improvement as a means to transport interstate or foreign commerce shoreward to their ordinary high water mark, including wetlands adjacent thereto. Those waters are specifically identified in ATTACHMENT A – "Navigable Waters of the United States in U.S. Army Engineer District, Detroit, November 1981", attached to this Memorandum of Agreement, which will be regulated by [Michigan] and [the Corps] under applicable state and Federal statutes.

Dkt. No. 27-2 at 2. In other words, the 1984 MOA determined that Michigan has permitting authority, under Section 404, over all the waters in the state other than those listed in Attachment A to the agreement over which the Corps retains jurisdiction. Because this attachment only includes the portion of the Menominee River beginning at the mouth of the River upstream 1.86 miles to, but not including, the Interstate Highway Bridge (U.S. 41), it thus follows that the portion of the Menominee River where the Back Forty Project is located and its adjacent wetlands are subject to Michigan's permitting authority. Accordingly, when the EPA approved Michigan's permitting program in 1984, the EPA made a final decision that Michigan would assume permitting authority over the portion of the Menominee River at issue in this case.

The Coalition also asserts that the Corps' determination regarding navigability could not have constituted a final agency action because, under the Rivers and Harbors Act, the courts are the final arbiters on the "'[p]recise definitions of 'navigable waters of the United States' or 'navigability.'" Dkt. No. 27 at 17 (quoting 33 C.F.R. § 329.3). Section 329.3 provides

> Precise definitions of "navigable waters of the United States" or "navigability" are ultimately dependent on judicial interpretation and cannot be made conclusively by administrative agencies. However, the policies and criteria contained in this regulation are in close conformance with the tests used by Federal courts and determinations made under this regulation are considered binding in regard to the activities of the Corps of Engineers.

Although the Corps' navigability determinations are ultimately dependent on judicial interpretation, the Corps' determination regarding navigability are binding on the Corps. As a result, the Corps' decision as to which waters were within Michigan's assumed authority was a binding decision that constituted final agency action.

Next, the Coalition argues that its claim is consistent with jurisprudence governing as-applied challenges to agency decision making. The defendants counter that the Coalition's remedy is not limited to as-applied relief because the Coalition is seeking a determination that the entire Menominee River is a retained water under Section 404 and subject to federal authority, which would impact the overall delegation of authority to Michigan and any Section 404 permit for a project along the River. Even if the Coalition's claim could be considered an as-applied challenge, the defendants assert the claim fails because the Coalition has not identified a final agency action that is reviewable under the APA. The Coalition contends that, while the EPA did not declare in writing that the permit fell within Michigan's assumed authority, the EPA took action consistent with such a determination by objecting to the permit application as not complying with the CWA

9

requirements.  The Coalition relies on *United States Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807 (2016), to argue that the EPA's "tacit jurisdictional determination" is a final agency action subject to review.

In that case, three companies engaged in mining peat sought APA review to challenge a determination by the Corps that their land contained "waters of the United States," such that the CWA prohibited discharging pollutants onto the land without a permit.  The companies sought to appeal the ruling before the completion of the permitting process, and the Supreme Court addressed whether approved jurisdictional determinations, which definitively state whether or not waters of the United States are present on a particular property, are final agency actions subject to review under the APA.  *Id.* at 1813.  Because the parties did not dispute whether the agency action at issue consummated the agency's decisionmaking process, the issue before the Court was whether an approved jurisdictional determination was an agency action by which rights or obligations had been determined, or from which legal consequences will flow.  The court's inquiry focused on whether the agency action gave "rise to 'direct and appreciable legal consequences.'" *Id.* at 1814.  The Court found that approved jurisdictional determinations have direct and appreciable legal consequences because, under the applicable statutes and regulations, a negative jurisdictional determination binds the Corps and the EPA to a determination that the parcel lacks federally-regulated waters or that the parcel contains such waters.  In addition, if the petitioner failed to heed the jurisdictional determination, it did so at the risk of significant criminal and civil consequences.  *Id.* at 1815.  The Court therefore held that approved jurisdictional determinations are final agency actions.  *Id.* at 1813.

*Hawkes*, however, is distinguishable from the instant action. Whether an EPA objection constitutes final, reviewable agency action was not at issue in *Hawkes*. Although the Coalition equates the EPA's objections with an approved jurisdictional determination, a number of courts have found that EPA objections are not final agency actions. *See Marquette Cty. Road Comm'n v. United States E.P.A.*, 726 F. App'x 461, 467 (6th Cir. 2018) ("[T]he Road Commission has failed to demonstrate that EPA's objections . . . consummated the decisionmaking process in the Section 404 permit proceeding. . . . In the absence of any decision from either agency to ultimately deny or grant the permit, however, we have nothing to review."); *Friends of Crystal River v. United States E.P.A.*, 35 F.3d 1073, 1079 (6th Cir. 1994) ("[A]n EPA decision to object does not constitute final agency action."); *Am. Paper Inst. v. United States E.P.A.*, 890 F.2d 869 (7th Cir. 1989) (finding that the court lacked jurisdiction to review the EPA's objections under the NPDES program); *Champion Int'l Corp. v. United States E.P.A.*, 850 F.2d 182 (4th Cir. 1988) (EPA's "objection and assumption of issuing authority are not final actions subject to judicial review"). This court agrees.

"[A]gency action that merely reiterates or affirms an earlier agency decision and does not affect the rights or alter the status quo of the complaining party is not considered a 'final agency action.'" *Harris v. FAA*, 215 F. Supp. 2d 209, 213 (D.D.C. 2002) (citing *Impro Prods., Inc. v. Block*, 722 F.2d 845, 850 (D.C. Cir. 1983)). The EPA's objections did not reflect the consummation of a decision-making process; instead, the EPA's decision to object to the permit application, rather than assume primary authority over the permit, merely reflects the fact that Michigan had already assumed permitting authority over the Menominee River in 1984. The EPA simply followed the requirements of the 1984 MOA, and the permitting process continued as directed by statute. In short, the EPA's objections do not mark the "consummation" of the agency's decisionmaking

11

process and are therefore not final agency action reviewable by this court. The final agency action, here, is the EPA's 1984 decision allowing Michigan to assume permitting authority over Section 404 permits related to the Menominee River, and the statute of limitations period to challenge that action has long expired. The Coalition has therefore failed to state a claim rasing an as-applied challenge under the APA.

**B. Arbitrary and Capricious**

The Coalition also asserts that the EPA's decision that its March 8, 2018 objections to the Section 404 permit were resolved was arbitrary and capricious, an abuse of discretion, and contrary to law. The defendants maintain that the EPA's decision to withdraw its objections to the permit is not reviewable because that decision is committed to the EPA's discretion.

The APA creates a cause of action for a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." 5 U.S.C. § 702. Although the APA allows a district court to "hold unlawful and set aside" any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," § 706(2)(A), judicial review is not afforded in cases where the agency actions are "committed to agency discretion by law." § 701(a)(2). The "committed to agency discretion" exception applies only "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply," or when "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (quotation marks and citations omitted); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

The Coalition asserts that the EPA's decision to withdraw its objections is a reviewable agency action because, once the EPA exercises its discretion to object, specific regulations apply to facilitate the resolution of the objection. *See* 40 C.F.R. § 233.50. The Coalition maintains that the EPA may modify or withdraw its objection only if the EPA has held a public hearing on the objection in accordance with its regulations. *See* § 233.50(h) ("If a public hearing is held under paragraph (g) of this section, the Regional Administrator shall, following that hearing, reaffirm, modify, or withdraw the objection or requirement for a permit condition, and notify the Director of this decision."). In its amended complaint, the Coalition alleges that the EPA objected to Aquila's proposed wetland permit on March 8, 2018, and advised that it would consider its objections resolved if the MDEQ required that Aquila provide additional documentation and information to the EPA. *See* Am. Compl. Ex. A, Dkt. No. 18-1 at 2–3. On May 3, 2018, the EPA issued a letter noting that it considered its objections resolved by use of permit conditions that allowed the required information to be submitted after the issuance of the permit. Am. Compl. ¶ 109. It subsequently issued a decision on June 1, 2018, indicating that the modified permit resolved its objections. *Id.*

The Coalition contends that, because no public hearing was held under § 233.50(h), Aquila and the MDEQ were limited to "taking the steps" provided in the March 8, 2018 letter to resolve the EPA's objections. *See* § 233.50(f) ("When the Director has received an EPA objection or requirement for a permit condition to a permit application or draft general permit under this section, he shall not issue the permit unless he has taken the steps required by the Regional Administrator to eliminate the objection."). The Coalition claims that the EPA failed to follow the process set forth in the regulations when it did not require that the missing information be submitted before the

13

permit could issue and when it modified and withdrew its objections even though it never held a public hearing.

The Coalition has not identified any meaningful standard by which to judge the EPA's decision that its objections had been resolved, however. Although the regulations set forth the procedural requirements the EPA must adhere to when it exercises its discretion to object to the permit, the regulations do not create a meaningful standard to evaluate the EPA's determination that its objections are satisfied. *See* § 233.50(i) (the permit must be "revised to satisfy EPA's objections"). Indeed, once the EPA objects to a proposed Section 404 permit, neither the CWA nor the regulations specify that the Administrator is stripped of his discretion to decide whether to later withdraw the EPA's objections. Because the statute is drafted in such broad terms such that there is no clear law to apply and no meaningful standard against which to judge the agency's exercise of discretion, the EPA's discretionary decision to object to the Section 404 permit and then withdraw those objections is not reviewable agency action under the APA.

Citing *Friends of Crystal River v. United States Environmental Protection Agency*, 35 F.3d 1073 (6th Cir. 1994), and *Cowpasture River Preservation Association v. Forest Service*, 911 F.3d 150 (4th Cir. 2018), the Coalition asserts that a federal agency's decision to withdraw its objections is reviewable under the arbitrary and capricious standard. But those cases are distinguishable from the case at hand. In *Friends of Crystal River*, the EPA objected to a party's Section 404 permit in the state of Michigan. 35 F.3d at 1076. The EPA and the state could not resolve their objections within 90 days as required by the regulations and permitting authority transferred to the Corps as a result. *Id.* The EPA later withdrew its objections and attempted to have permitting authority transferred back to the state. *Id.* at 1077. A number of environmental groups filed suit challenging

14

the EPA's attempted transfer of authority over the permitting process back to the state. The plaintiffs did not challenge the objections themselves. The court concluded that judicial review was appropriate under these circumstances because the EPA's transfer of permitting authority back to the state was a non-discretionary act and the EPA's withdrawal of its objections is a final decision that, "if unreviewed, will terminate the federal government's role" in the case. *Id.* at 1079. It reasoned that, because permitting authority had transferred to the Corps by operation of the law, "the transfer of authority to the Army Corps is not so discretionary that there is no law to apply." *Id.* at 1079 n.12. As a result, the court held that review of the EPA's decision to withdraw its objections and return the permitting process to the state was appropriate. In this case, the EPA determined that its objections were satisfied before the statutory deadline and permitting authority did not transfer to the Corps. The EPA timely withdrew its objections and did not go outside of its authority by improperly transferring permitting authority. It simply acted within its discretion.

The Coalition also cites *Cowpasture River Preservation Association v. Forest Service*, 911 F.3d 150 (4th Cir. 2018), for the proposition that, even if there was some remaining agency discretion to withdraw objections once made, a federal agency's decision to withdraw objections may itself be reviewed under the arbitrary and capricious standard. In that case, the petitioners asserted the Forest Service violated the National Forest Management Act (NFMA), National Environmental Policy Act (NEPA), and Mineral Leasing Act (MLA) when it issued a special use permit authorizing a developer to construct a natural gas pipeline through parts of certain national forests. In particular, the petitioners claimed that the Forest Service violated the NEPA when it adopted the Federal Energy Regulatory Commission's inadequate final environmental impact statement (FEIS) without undertaking the "independent review" required by the NEPA. *See*

15

§ 1506.3(c) ("A cooperating agency may adopt without recirculating the environmental impact statement for a lead agency when, after an independent review of the statement, the cooperating agency concludes that its comments and suggestions have been satisfied."). The court found that the Forest Service acted arbitrarily and capriciously when it adopted the unchanged alternatives analysis in the FEIS without undertaking the requisite independent review. *Cowpasture*, 911 F.3d at 172–73. In other words, the court concluded the Forest Service's conduct was reviewable under the APA because it violated a clear regulatory requirement set forth in the NEPA's regulations. But both the CWA and its regulations leave the objection process with respect to Section 404 permitting to the EPA's discretion.

The Seventh Circuit addressed the EPA's discretionary authority to withdraw its objections to a proposed permit in the context of the National Pollutant Discharge Elimination System (NPDES) permitting program in *American Paper Institute, Inc. v. United States Environmental Protection Agency*, 890 F.2d 869 (7th Cir. 1989). In that case, the EPA authorized the Wisconsin Department of Natural Resources (WDNR) to issue permits to pollutant dischargers in Wisconsin under the NPDES, 33 U.S.C. § 1251, *et seq.* Pursuant to that authority, the WDNR proposed to issue thirteen permits to paper and pulp mills located throughout Wisconsin. The EPA objected to all thirteen proposed permits, allowed comments on its objections, and held a public hearing. Although the EPA subsequently modified certain objections, it reaffirmed its remaining objections to eleven permits. The WDNR modified those permits to meet the EPA's objections. American Paper Institute and four paper and pulp mill owners filed a federal lawsuit challenging the EPA's authority to object to the NPDES permits proposed by the WDNR. *Am. Paper*, 890 F.2d at 872.

The court concluded that it lacked subject matter jurisdiction over the appeal and dismissed the petition. *Id.* at 878. The court explained that, although "EPA objections could arguably be challenged in district court under the Administrative Procedure Act," federal review was unavailable in this instance because an EPA objection is an agency action committed to agency discretion and the CWA precludes federal review of state-issued permits. *Id.* at 875. The court noted that, the CWA "demonstrates an intent for the EPA and the states to work through differences in permitting decisions, and the EPA needs a range of discretion to accomplish this goal," and federal courts should therefore "leave EPA with its discretion to review state-issued permits." *Id.*

Consistent with Seventh Circuit precedent, the court concludes that the EPA's discretionary decision to object to a Section 404 permit and later withdraw those objections is not reviewable under the APA. Much like the NPDES permitting program, the state permitting process under Section 404 permits the EPA to exercise broad discretion in overseeing the permitting program, which includes the decision of whether to object to the permit and withdraw its objections once it decides the objections have been resolved. There is no standard in the statute or the regulations that provides meaningful guidance by which to judge the EPA's determination that its objections have been satisfied or to judge the EPA's exercise of discretion. For this reason, the Coalition's amended complaint fails to state a cognizable claim under the APA.

Even if the EPA's decision to withdraw its objections is not discretionary, it is not a final agency action subject to judicial review because it is neither the "consummation of the agency decisionmaking process" nor a decision "from which legal consequences will flow." *Bennett*, 520 U.S. at 177–78. As the Sixth Circuit explained in *Marquette County*, the "CWA establishes one continuous application process to obtain a Section 404 permit." 726 F. App'x at 467. In other

17

words, the decisionmaking process ends when a permit is issued, and the "decision points" along the way "do not equal . . . separately reviewable permit processes." *Id.* The EPA's review of a "draft state permit is merely an interim step in the state permitting process." *S. Cal. Alliance of Publicly Owned Treatment Works v. EPA*, 853 F.3d 1076, 1081 (9th Cir. 2017) ("EPA may decide to withdraw the objection . . . , or the state may revise a draft permit to remedy EPA's objection and issue the permit. . . . In either case, the permitting decision remains the state's."). In this case, the EPA's review of the permit was merely interlocutory in nature and did not consummate any decisionmaking process. In addition, legal consequences, rights, or obligations do not flow from the EPA's review of the revised permit and instead flow from the state's decision to issue the permit. Accordingly, the EPA's decision is not a final agency action reviewable by this court. For this reason as well, the Coalition has failed to state a cognizable claim under the APA.

## CONCLUSION

For these reasons, the Federal Defendants and Aquila's motions to dismiss (Dkt. Nos. 23 and 25) are **GRANTED**, and the case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this ___20th___ day of October, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court